No. 2714.

JOHN FIELD v. THE STATE.

BURGLARY—POSSESSION OF RECENTLY STOLEN PROPERTY—FACT CASE.—
To warrant an inference of guilt of theft from the circumstance of pos-
session of recently stolen property, such possession must be personal and
exclusive; must be unexplained, and must involve a distinct and con-
scious assertion of property by the defendant. See the statement of the
case for evidence which, under this rule, is *held* insufficient to support a
conviction for burglarious theft.

APPEAL from the District Court of Taylor.   Tried below before
the Hon. T. H. Conner.

The conviction was for the burglary of the store house of Leon
Caperon, in Taylor county, Texas, on the twelfth day of Febru-
ary, 1887, and the penalty assessed against the appellant was a
term of two years in the penitentiary.

Leon Caperon was the first witness for the State.   He testified
that, on February 12, 1887, the day alleged in the indictment, he
was engaged in the wholesale and retail grocery business in the
city of Abilene, Taylor county, Texas.   On the night of the day
mentioned, which was Saturday, some party or parties broke
into the witness's store house, in which he conducted the said
business.   Witness learned of the burglary at about eight o'clock
on the next day, Sunday.   Two or three sacks of flour, four boxes
of cigars and some hams were taken from his said store by the
burglar or burglars.   They also took a case containing three or
four dozen pint bottles of beer.   Of the cigars taken, one box
was of the Mandoline brand, and the other three of the La For-
tuna brand.   The four empty cigar boxes now shown the witness
were of the said brands, and the witness supposed that the said
boxes were his.   The witness had "handled" the said brands for
some time, and had sold a great many, but not of the shipment
last received.   Gus Ackerman was the only other merchant in
Abilene who sold the La Fortuna brand, and he bought his sup-
plies of the said cigar from the witness.   The flour taken was
of the Ruby brand.   The defendant had worked about the wit-
ness's store, and was familiar with the premises.   The house

was entered at the rear door by prying off the hook which se-cured it on the inside.

On his cross examination, the witness said that he was well acquainted with George Field, who worked about witness's store for three years as porter. Witness discharged the said George about three weeks before the burglary, for inattention and intox-ication, and because, having missed various articles of small value, he became suspicious of George's honesty. Witness did not know who burglarized his store and took his goods. He could not say defendant was the guilty party, nor could he say that George Field was not. Some beer was taken from tap at the same time the other things were taken. The house was en-tered and the goods taken without the consent of witness.

R. E. Burch testified, for the State, that he learned of the bur-glary of Caperon's store on Monday morning after it happened. The fact was reported to him by Mr. Poot. Witness went at once to the defendant's house, which he found closed and no one at home. He entered the said house through a window, which he opened, and found two cigar boxes, one being half full and the other full of cigars. The half full box was in a safe and the full box was on the safe. He also found a barrel well filled with flour, and a recently emptied flour sack lying near it. He did not remember the brand on the flour sack. Witness went back to the defendant's house in the afternoon, and found the defend-ant's wife and her brother, one Lige Green. Witness could not then find the sack, nor could he learn anything of it by inquiry. On his way back to town from defendant's house, in the morning, the witness met and arrested the defendant. Defendant then had a cigar in his pocket, which looked like, and which witness took to be, a La Fortuna cigar. Two of the cigar boxes exhibited are the two taken by the witness from the defendant's house on his first visit in the morning.

On his cross examination, the witness stated that he was pres-ent at the examining trial of the defendant. Defendant had no counsel on that trial. He made a statement, which was reduced to writing by County Attorney Hardwicke. Just after the witness went to the house of the defendant, in the morning, he went to the house of George Field. He found in a trunk in George Fields's house an empty Mandoline cigar box, the same now exhibited in court. When witness first went to the house of the defendant, as stated in his direct examination, he saw a large number of empty beer bottles about the yard. Defendant's

house was about seven blocks distant from Caperon's store. Defendant's examining trial was had on the Tuesday following the burglary.

Rube Peyton was the next witness for the State. He testified that he was in Mr. Caperon's employ on the twelfth day of February, 1887. His duties were to attend to the beer department and open and close the store. He generally closed at dark and opened at daylight. Witness remembered closing the doors on the night of the burglary, particularly by the fact that he swept some flour dust out of the back door just as he closed and hooked it. He came to the store about daylight on Sunday morning and found the back door open and tracks leading into the store. It had rained during the night, and the feet of the burglar or burglars took mud into the store and left moist mud impressions. Witness could not tell whether the several impressions he saw inside the store were made by the feet of one or more men. Some of those tracks led into the store cellar. Witness missed four or five sacks of flour of the Ruby brand, several hams and a case of beer. He missed no cigars, but did not examine the stock of cigars. The tracks indicated the presence of more than one man, but may have been made by a single person making several trips into and out of the store.

On his cross examination the witness said that he had been in Caperon's employ six or eight months. Witness missed no beer from the vault. If there was any beer on tap the witness did not know it. Witness knew the amount of flour gone from the fact that but five sacks were in stock when he closed at night, and none were in the store on Sunday morning. George Field was in Caperon's employ when witness first entered his service, and the said George Field often assisted witness in closing the store and securing the doors. He was therefore perfectly familiar with the fastenings of the doors. George Field was discharged by Caperon about a month before the burglary. Defendant was also familiar with the arrangement of the store, and had worked about it a few times. The only time that witness ever found the store door open was on the morning after the burglary.

Gus Poot testified, for the State, that he was book keeper for Caperon at the time of the burglary. Witness came to the store about half past eight o'clock on Sunday morning, when Rube Peyton called his attention to the indications of burglary. Upon examining the stock witness missed a case of beer and

some cigars.  He had arranged the cigars on the Saturday evening before, and could readily tell what boxes were gone.  The only disposed of box out of the late shipment of the La Fortuna brand of cigars was a box sent by witness to a friend in El Paso. One box of Mandoline and two boxes, at least, of the La Fortuna had been stolen.  No dealer in Abilene handled the La Fortuna except Ackerman, and he bought his supplies from Caperon.

R. E. Burch was recalled and testified, for the State, that he was present, as constable, at the examining trial of the defendant before Justice Dougherty, and heard the justice tell defendant that he was at liberty, but could not be required, to make a statement, and that, although the statement could be afterwards used against him, it could not be used in his behalf.  Defendant then made a voluntary statement which was written down by Mr. Hardwicke, and attested officially by the justice.  Witness identified the instrument in writing (here offered) by the hand writing of Hardwicke, by the contents, and by the certificate and signature of the justice.  That instrument, being the voluntary statement of the defendant, reads (the caption omitted) as follows:  "I don't know anything about the matter.  George Field brought the cigars to my house last Thursday morning, I think.  I am not certain about the time.  I think, though, it was last Thursday morning.  He said he had been up to Colorado City and brought the cigars down from there with him when he came.  I don't know anything about any flour.  If George Field got any flour I don't know anything about it. When George Field quit working at Leon Caperon's—a day or two after he quit—he went up to Colorado City.  He stayed away three or four days about that time, and when he came back he brought the cigars with him."

Lucy Smart testified, for the State, that on Sunday morning— the morning after the burglary—at about seven o'clock, she met George Field on his way to clean up a saloon.  He gave witness some oysters, and asked her to cook them for him.  At about eight o'clock, he and Rich. Rogers came to witness's house and ate breakfast.

On her cross examination, the witness denied that she ever told W. H. Woodruff that she wanted him, Woodruff, to testify that George Field stayed at her house on the night of the burglary. The witness made no attempt to get Woodruff to so testify.  She made no attempt to get Bob Fisher to testify that George Field stayed at her house on the night of the burglary.

Rich. Rogers testified, for the State, that he and George Field ate breakfast at Lucy Smart's house on the morning after the burglary. Thence they went to the defendant's house and ate another breakfast.

Lou Johnson testified, for the State, that George Field came to her house on the night of the alleged burglary, at about ten o'clock, and went to bed. He came to witness's house alone, and went to bed in the front room. Witness went to bed in the back room. When she got up next morning, George Field was gone.

Cross examined, the witness said that she was the oldest female resident of Abilene, and was known as "Prairie Dog Lou," from the fact that she built her first house over a prairie dog hole. George Field did not sleep with the witness on the night of the burglary, nor in the same room with her. He had never before stayed at witness's house over night. He said nothing more when he came to the house than that he wanted to stay all night. The room in which George Field slept was connected with the witness's room by a door. George Field was in the front room when witness went to sleep, but witness did not know how long he remained in the room.

The State closed.

W. H. Woodruff testified, for the defense, that, on the day after George Field was arrested for the burglary of Caperon's store, Lucy Smart came to witness's house and tried to get him to testify that George Field stayed at her house throughout the night of the alleged burglary. She also tried to get Bob Fisher to testify to the same effect. Witness declined to testify as she requested.

Minnie Field, the wife of the defendant, was his next witness. She testified that she had a vivid recollection of the reported robbery of Mr. Caperon's store. She was cooking for Mr. Roberts at that time. Defendant came to Roberts's house about dark on that Saturday night and escorted the witness home. They reached home about eight o'clock, talked awhile, and then went to bed, occupying the same bed. The witness knew, as a positive fact, that defendant did not leave his bed at home during that night. George Field and Lige Green were then staying at the witness's house, and occupied a bed in another ronm. When George started to bed, he told witness that he wanted to get up early on the next morning. When the clock struck five on the next morning, witness called George Field, but he was gone. Lige said that he had left the house a few minutes before witness

called him.  Witness and the defendant slept late on that morning, and when defendant got up he went to Mr. Roberts's house and cooked the breakfast in the stead of the witness.  He returned about eleven o'clock, and soon went back to Mr. Roberts's and got the dinner.  He came home after dinner, and he and witness spent the rest of the day at home.  Witness spent that day at home because she was sick.  Witness knew nothing about the cigars being in her house until George Field, after his arrest, sent for her.  She went to the jail to see him.  He then told witness that he took the cigars to her house, and asked witness to go to see Mr. Caperon for him.  Witness did not know who put the flour in the barrel.  The barrel contained some flour brought there from Fort Worth, and George Field put in some more about a week before his arrest.  Witness had not been staying at home recently, and had done no recent cooking at home—consequently she knew little about the kitchen.  George Field brought some cigars to witness's house when he returned from Colorado City, about a week before the burglary, and, on the Sunday morning after the burglary, he and defendant and Lige Green smoked some of them in the house.  It was on that morning that the witness first saw the cigar boxes now in evidence.  About five o'clock, on Sunday after the burglary, George Field brought a sack of bottled beer to the witness's house.  He brought it from his own house.  No one saw him but the witness.

On her cross examination the witness said she was brought to the court from jail, where she was confined on a charge of taking a file to the defendant in jail.  She was also in custody under a charge against her in the Federal court at Dallas, of taking a letter from the post office which did not belong to her.  That letter was addressed to John Field.  Witness got it from the post master at Fort Worth, and thinking it was meant for her husband, she took it to him at Abilene.  That letter contained a post office order for four dollars and fifty cents, which witness afterwards gave to the post master at Fort Worth.  When witness was tried before the United States commissioner, the said letter was lost, but had been found since.

The motion for new trial raised the questions discussed in the opinion.

*M. A. Spoonts,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

Willson, Judge.   There is not sufficient evidence before us to sustain this conviction.   Conceding that the proof that the articles found at defendant's house were a portion of the property which had been stolen from the burglarized house, said articles were not found in the personal and exclusive possession of the defendant, nor did he claim the same as his property.   We fail to find any other evidence in the record which tends with any cogency to prove defendant's guilt.   To our minds the evidence falls far short of establishing the guilt of the defendant with that degree of moral certainty which excludes every other reasonable hypothesis.

To warrant an inference of guilt of theft from the circumstance of possession of recently stolen property, such possession must be personal and exclusive, must be unexplained, and must involve a distinct and conscious assertion of property by the defendant. (Willson's Texas Crim. Laws, sec. 1299.) No such possession is shown by the evidence in this case.

Because the evidence does not sustain the conviction the judgment is reversed and the cause is remanded.

*Reversed and remanded.*